UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-20141-CR-MARTINEZ/BANDSTRA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

KARELIA VAZQUEZ,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court on Defendant Karelia Vazquez's Amended Motion to Suppress Defendant's Statement (D.E. 21) filed on May 7, 2007. Previously, defendant's original motion to suppress (D.E. 19) was referred to the undersigned for appropriate proceedings by the Honorable Jose A. Martinez pursuant to 28 U.S.C. § 636(b).[1] Thereafter, the undersigned conducted an evidentiary hearing on this motion on May 15, 2007. Based on the facts as stated herein and applicable law, the undersigned recommends that defendant's motion to suppress be GRANTED for reasons explained below.

---

[1] Defendant's subsequently amended her original motion to suppress by including a memorandum of law as required by the local rules.

## **FINDINGS OF FACT**[2]

On March 6, 2007, Karelia Vazquez (hereinafter "defendant") was indicted in this district and charged with possession with intent to distribute controlled substances (Counts 1-3); using and maintaining a place for purpose of manufacturing a controlled substance (Count 4); and possessing a firearm in furtherance of a drug trafficking crime (Count 5). Thereafter, defendant, through her attorney, agreed to undergo a polygraph examination with respect to the firearms charge with the understanding that the government would dismiss the charge if she passed the examination.

On April 4, 2007, defendant, her attorney, and the federal prosecutor met with Special Agent John Ludlum of the DEA at the polygraph examination room. There, the prosecutor advised defendant in the presence of her attorney that the gun charge would be dismissed if defendant passed the examination. Defendant was also advised that the polygraph examination would focus only on the gun charge and the presence of the firearm in defendant's residence. Defendant was also advised that the polygraph test would be conducted outside of the presence of her attorney but that she could ask to speak with her attorney, if she wished, at any time during the examination. Defendant stated that she understood these procedures and had no questions about the purpose of the polygraph test or the procedures. Defendant's attorney and the prosecutor then exited the examination room.

Special Agent Tom Floyd, an experienced polygraph examiner with the DEA, then

---

[2]These factual findings are based on the testimony of Special Agents John Ludlum and Tom Floyd of the United States Drug Enforcement Administration who were the only two witnesses called to testify at the suppression hearing conducted on May 15, 2007.

met with defendant alone in the examination room. Agent Floyd first introduced himself to defendant and presented her with the Polygraph Consent Record typically used by the DEA. Using the form, Agent Floyd explained to defendant the nature of the polygraph examination and confirmed that the exam would be given with her consent. Agent Floyd also explained that defendant had the right to consult with her attorney prior to the examination. Defendant acknowledged that she did not wish to consult with her attorney at that time. Agent Floyd then explained that defendant did not have to make any statement whatsoever; but that any statement she made could be used against her in court. Defendant signed the consent form thereby acknowledging her understanding of her right to refuse consent, and that she voluntarily consented to the polygraph examination without duress, coercion, unlawful inducement or promise of reward. Thereafter, Agent Floyd orally advised defendant of her *Miranda* rights before proceeding with the test. Defendant orally acknowledged her understanding of those rights and that she wished to waive them.

Agent Floyd then proceeded to explain the procedures he would use to administer the polygraph test. Agent Floyd told defendant that he would ask her to tell "her story" and then ask her a series of questions relating only to the gun charge. Defendant appeared to understand these procedures and asked no questions of the agent at that time. Agent Floyd then asked defendant to tell "her story" after which he asked specific questions about the presence of the gun.

Following the polygraph examination, Agent Floyd analyzed the results and determined that defendant "showed deception" during the test. Agent Floyd confronted defendant with these results and told her to tell him the truth. Agent Floyd specifically

asked defendant about the firearm in the residence and inquired whether it was there to commit a homicide, or to steal from other persons, or to "protect the dope." Defendant told Agent Floyd that the gun was there solely to protect the drugs.

Agent Floyd then asked defendant if she was willing to make her a written statement concerning the firearm. Defendant agreed but first asked whether her attorney was aware of this and whether he should be present. Agent Floyd told defendant that her attorney was already aware of the situation. Defendant then asked Agent Floyd what to write in her statement and he told her to write that the gun was there to protect the drugs. Defendant did so but then immediately recanted her statement stating that it was not true.

## ANALYSIS

Defendant moves to suppress all statements made to Agent Floyd following the completion of her polygraph examination, including the statement that the gun was there to protect drugs, on the ground that her statement was not freely and voluntarily made and was obtained in violation of her rights under the Sixth Amendment to the United States Constitution. More specifically, defendant argues that she voluntarily agreed to a polygraph examination on the gun charge in the indictment but that neither she nor her attorney agreed to a post-test interview with the polygraph examiner which resulted in the statement. Defendant also contends that the interview occurred only after she questioned whether her attorney should be present before she made the written statement. Defendant argues that this was a request for counsel which should not have been ignored and which resulted in a violation of her constitutional rights.

United States District Court
SOUTHERN DISTRICT OF FLORIDA
MIAMI, FLORIDA 33132

TED E. BANDSTRA
UNITED STATES MAGISTRATE JUDGE

The precise issue to be determined on this motion is whether defendant freely and voluntarily waived her right to remain silent and/or to consult with her attorney following the polygraph examination. The Supreme Court has held that once a defendant expresses a desire to deal with the police only through counsel, the authorities may not further interrogate the defendant until "counsel has been made available to [her] unless the accused [herself] initiates further communication, exchanges or conversation with the police." *Dunkins v. Thigpen*, 854 F.2d 394, 396 (11th Cir. 1988) (*quoting Edwards v. Arizona*, 451 U.S. 436, 484-85 (1981)). The Supreme Court has also held that the inquiry into whether a defendant has waived her rights under *Miranda*[3] voluntarily, knowingly and intelligibly had two distinct dimensions:

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequence of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* at 398 (*quoting Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 1141 (1986)). While courts have developed conflicting standards for resolving ambiguous requests for counsel in different situations, the Supreme Court has held that requests for counsel should be interpreted broadly. 854 F.2d at 398, fn. 7 (*citing Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 1409 (1986)). Also, the issue of waiver is somewhat more complicated in situations, like this, involving a statement made in connection with a polygraph examination. As explained in *Dunkins*:

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

>Federal courts have had some difficulty determining when defendants "evince a willingness and a desire for a generalized discussion." under the initiation prong of the *Edwards* analysis. *See Lamp v. Farrier*, 763 F.2d 994, 997-998 (8th Cir.), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 534, 88 L.Ed.2d 465 (1985). This is particularly true when the case involves statements connected with the administration of a polygraph test. Compare *United States v. Nordling*, 804 F.2d 1466, 1471 (9th Cir. 1986) (no need to readminister *Miranda* rights before questioning defendant about the results of a polygraph test) and *Barrera v. Young*, 794 F.2d 1264, 1265 (7th Cir. 1986) (waiver and consent to take a polygraph test allows prosecution to use as evidence any post-examination statements) with *Rothgeb v. United States*, 789 F.2d 647, 651 (8th Cir. 1986) (evidence of defendant's demeanor during polygraph questioning is admissible even though results and evidence of a refusal to take the test may not be) and *United States v. Gillyard*, 726 F.2d 1426, 1429 (9th Cir. 1984) (*Wyrick* does not establish a per se rule that *Miranda* warnings are not required after a polygraph test).

*Id.* at 398.

Applying these principles to the facts of this case, the undersigned finds that defendant did not freely and voluntarily waive her right to counsel prior to making her incriminating statement after completion of the polygraph examination. Although finding no intimidation, coercion or deception by Agent Floyd or any other law enforcement officer, the undersigned cannot find, under *Moran*, that defendant's waiver of rights at that point was "made with a full awareness" of both the nature of the right being abandoned (i.e., her right to speak to her attorney prior to making a written statement), and the consequences of her decision to abandon it (i.e., government's use of the statement at trial). Here, defendant agreed to be questioned by Agent Floyd only in conjunction with a polygraph test and with no clear understanding or expectation, by either defendant or her attorney, that a post-examination interview would follow if defendant's veracity was at issue. Moreover, defendant clearly asked whether her attorney was aware of the post-test

interview and questioned whether she should speak to him before making a written statement. While this can only be viewed as an "ambiguous" request for counsel, the undersigned finds that the examiner should have terminated the interview at that point and contacted defendant's attorney rather than proceeding in his absence while advising defendant that her attorney was aware of the situation. Defendant was clearly not aware of the rights being abandoned or the consequences of any decision to abandon those rights. Proceeding with the interview and taking defendant's written statement under these circumstances violated defendant's rights to remain silent and to consult with her attorney under the Sixth Amendment.[4]

## SUMMARY AND RECOMMENDATION

In summary, the Court finds that defendant's Sixth Amendment right to counsel was violated under the totality of the circumstances here. Accordingly, the undersigned recommends that Defendant's Amended Motion to Suppress Statements be GRANTED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Jose E. Martinez, United States District Judge, within ten (10) days of the receipt. See 28 U.S.C. § 636(b)(1)(c); United States v. Warren, 687 F.2d 347 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983); Hardin v.

---

[4]AUSA Ben Curtis conceded his own concerns that defendant's Sixth Amendment rights had been violated under these circumstances but declined the undersigned's invitation to not use the subject statements at trial.

Wainwright, 678 F.2d 589 (5th Cir. Unit B 1982); see also Thomas v. Arn., 474 U.S. 140 (1985).

RESPECTFULLY SUBMITTED at Miami, Florida this 21st day of May, 2007.

_____
Ted E. Bandstra
Chief United States Magistrate Judge

Copies furnished to:

Honorable Jose E. Martinez

All counsel of record